## JOHNSON v. JOHNSON.

1. PRACTICE IN DIVORCE CASES.

When the defendant in a divorce case appears and denies the charges alleged, the issues must be tried by a jury. A verdict of a jury in a contested divorce case is an essential prerequisite to a divorce.

2. SAME—APPELLATE PRACTICE.

The rule which prevents appellate courts from disturbing verdicts based upon conflicting evidence applies with particular force to divorce proceedings.

3. DIVORCE—DESERTION.

Desertion, within the meaning of the divorce act, consists in the actual ceasing of cohabitation with the intent on part of the offending party to desert the other.

4. EVIDENCE OF INTENT.

Intent is largely a matter of inference and presumption, and the subsequent conduct of the parties frequently makes plain the intent with which an act was performed. In such cases evidence of subsequent conduct is admissible.

5. DIVORCE AND ALIMONY—PRACTICE.

The issues in a contested divorce case having been found for the plaintiff, she filed a supplemental petition relating exclusively to the property rights of the parties and the question of permanent alimony more specifically than was stated in the original pleading. *Held*, the practice was free from objection and commendable.

6. ALIMONY—LIEN.

The court may decree that the alimony awarded in a divorce case shall be a lien upon the real estate of the defendant, but not upon his personal property.

*Error to the District Court of El Paso County.*

ACTION for a divorce and alimony.

The complaint in this case, which was filed by appellee, Mary E. Johnson, in the month of November, 1890, alleges, *inter alia*, the marriage of plaintiff and defendant in the state of Indiana in 1862.

The complaint, aside from some general allegations, sets up two grounds for a divorce : *First*, the desertion of the plaintiff by the defendant on the 30th day of April, 1889. It is averred that said desertion was without reasonable

cause or justifiable excuse, and that it has continued from the last mentioned date to the time of the commencement of this action. As a *second* ground for a divorce the plaintiff alleges failure on the part of the defendant to support either her or her minor child for the space of upwards of one year, the defendant during that time being in good bodily health. The plaintiff prays that the bonds of matrimony existing between the parties may be dissolved; that she be given the control of their minor child, and that the defendant may be decreed to provide for the support and maintenance of both mother and child; for a temporary writ of injunction restraining defendant from disposing of his property, etc., during the pendency of the action, and that on final hearing the plaintiff may have such other relief as may be proper in the premises.

For answer to this complaint the defendant admits the marriage as alleged, but denies the desertion; denies failure to support; denies that during the time of which plaintiff alleges nonsupport that he was in good health, etc. For a cross complaint and counterclaim the defendant alleges the marriage in 1862; that the plaintiff, unmindful of her marriage obligations, without any reasonable cause or excuse, did, in July, 1889, at the county of El Paso, in the state of Colorado, desert the defendant and absented herself from him, and has continued to live separate and apart from him for more than one year, and so continued up to the time of the commencement of this action.

The prayer of this cross complaint is for the dissolution of the marriage ties, and for the custody of the minor son. All the allegations of the cross complaint, except those relating to the marriage, are denied in the replication.

The issues thus formed upon the pleas of desertion and nonsupport were submitted to a jury, and both resolved in favor of the plaintiff. A motion for a new trial was overruled, the question of permanent alimony being reserved for future consideration.

Afterwards, the plaintiff filed a further petition. This

petition relates entirely to the question of alimony. It avers that defendant is possessed of property of great value, particularly describing the same, and alleging that this property was accumulated by the joint efforts and industry of plaintiff and defendant; that plaintiff has but little property, this being heavily incumbered. An answer and replication were thereafter filed, the cause coming on to be heard before the court upon the issues thus made upon the question of alimony.

The following findings of fact were made and entered of record: *First.* That the real and personal property owned by the defendant, Timothy E. Johnson, is of the value of $35,000. *Second:* That the value of the property, both real and personal, of the plaintiff, Mary E. Johnson, is $17,100, with an incumbrance thereon aggregating the sum of $8,100, leaving her a net balance of $9,000. *Third.* That the total value of the property of plaintiff and defendant, after paying all debts, is the sum of $44,000. *Fourth.* That said property had all been accumulated during the existence of said marriage, by the joint industry and frugality of both parties. Upon these findings a judgment was rendered in favor of plaintiff and against the defendant for the sum of $11,159, the same to be paid as follows: $2,000 on or before January 1, 1894; $2,000 on or before January 1, 1895; $2,000 on or before January 1, 1896; $2,000 on or before January 1, 1897; $3,159 on or before January 1, 1898; the above amounts to draw interest at the rate of seven (7) per cent per annum, payable semiannually; and, in addition, the costs of the action were adjudged against the defendant.

The amount allowed as permanent alimony, and the costs of suit, are made a lien on all property, both real and personal, belonging to the defendant. A decree of absolute divorce was also rendered in favor of the plaintiff upon the verdict of the jury. The defendant brings the case here upon error.

Messrs. TAYLOR & LAWS and Mr. T. A. McMORRIS, for plaintiff in error.

Mr. J. K. VANATTA, Mr. J. M. DORR and Mr. VICTOR A. ELLIOTT, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

There are sixteen assignments of error in the record. About one half of this number refer to rulings of the trial court upon the charge of nonsupport contained in the complaint.

The statute in force at the time this case was tried provides that the marriage relation may be dissolved for the following, among other causes: Desertion, nonsupport. In this case the jury resolved the issues made by the pleadings upon each of the above grounds in favor of the plaintiff. Desertion being established, unless overthrown, the judgment of divorce must stand, and therefore a consideration of the charge of nonsupport becomes unnecessary.

The statute provides that in all cases for a divorce, where the defendant shall appear and deny the charges alleged, the same shall be tried by a jury. By this statute the verdict of a jury in a contested case is absolutely essential as a prerequisite for a decree of divorce. The rule, therefore, which prevents appellate courts from overthrowing verdicts based upon a conflict of evidence, applies with particular force to divorce proceedings under this statute.

A reference to the pleadings discloses that each party charges the other with desertion, alleging that the same had continued for more than one year. It is apparent from this, and also from the evidence, that the parties had been separated for more than one year immediately preceding the institution of the divorce proceedings. The plaintiff alleges that this separation was the fault of the defendant, while the defendant charges that it resulted entirely from the plaintiff's conduct. The issue thus raised having been resolved by the jury and district court in favor of the plaintiff upon conflicting evidence, it is not the province of this court to

weigh the evidence for the purpose of substituting its judgment for that of the court and jury below.

A careful reading of the evidence, however, convinces us that the verdict of the jury is right, and if we were at liberty to ignore the verdict, the result would not be other or different from that reached in the district court.

It has been held that desertion consists in the actual ceasing of cohabitation, and the intent in the mind of the offending party to desert the other. *Stein v. Stein*, 5 Colo. 55. It cannot be denied that there is evidence in this record going to show the existence of both of these conditions in this case. It is contended, however, that improper evidence was admitted for the purpose of showing the intent with which the defendant left the plaintiff. The particular evidence objected to is not pointed out by the assignments of error, but we infer from the argument that it consists of evidence of matters occurring subsequent to the separation. It frequently happens that the intent can only be shown by the subsequent conduct of the party to be charged. Intent is always largely a matter of inference and presumption, and the subsequent conduct of parties frequently makes plain the intent with which a previous act was performed.

That causes arise for the dissolution of the marriage relation is to be regretted in all cases; but where, as here, the parties have lived together as husband and wife for nearly thirty years, each enjoying the love and confidence of the other for a quarter of a century of that time, a separation in their declining years seems particularly distressing. Courts may regret, but they cannot prevent, this result. So, also, the task of making some just and equitable distribution of the estate, representing the accumulation of years of toil and deprivation, in which both have shared, is one that the courts would gladly avoid, if such a course were not inconsistent with duty.

It is apparent that the real contention between these parties is with reference to the distribution of the estate; and where the issue is made, it must be resolved upon the same equita-

ble principles as govern in other cases. It is not reasonable to suppose that absolute justice will be administered in all instances. The best that can be hoped for is that those principles which have stood the test of reason and judicial scrutiny will control. It is doubtless true that no two judges, acting independently upon the same state of facts, would distribute an estate between husband and wife exactly alike. Such exactitude is never required nor expected; but where the trial judge has given the matter due consideration in the light of correct legal and equitable principles, appellate courts will not undertake to disturb the judgment, unless the decision is manifestly unjust or unreasonable.

In this case widely different estimates were placed upon the value of defendant's property by the different witnesses.

On the one hand there is evidence in the record which would have justified the district judge in increasing plaintiff's allowance, while on the other there is testimony which, if standing alone, goes to show that the amount awarded as permanent alimony is excessive; but when all the evidence is considered, the result reached seems to be fair and just. Certainly nothing has been shown that would justify this court in setting aside the findings in this particular.

Objection is, however, based upon the ruling of the trial court allowing the plaintiff to file a supplemental petition. This supplemental petition relates solely and exclusively to property rights and the question of permanent alimony, matters which were presented in the original petition, but in a general way only.

It was eminently fit and proper, although not absolutely necessary, that such a pleading should be filed in order that the issue might be made more specific than in the original pleading.

The course pursued is not only free from objection, but it is in accordance with the better practice, and may be followed with advantage in other cases. 2 Bishop on Marriage, Divorce and Separation, secs. 1066 to 1073, inclusive.

The district court gave the plaintiff a lien for the amount

allowed as alimony upon all the property, both real and personal, of the defendant. Error is particularly assigned upon this part of the decree. In some of the states a decree for alimony is made by statute a lien upon real estate, and in some it has been held that the courts have power to create such a lien in the absence of expressed statutory authority therefor, although this latter proposition is denied in other states; but we know of no authority which permits the court to make a decree for alimony a lien upon the personal property of the defendant. The decided cases seem to deny the power of the courts to do this. 2 Bishop on Marriage, Divorce and Separation, sec. 1100.

We are referred to our statute in support of this part of the decree.

" When a divorce shall be decreed it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care and custody of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just; and in case the wife be complainant, to order the defendant to give reasonable security for such alimony and maintenance, or may enforce the payment of such alimony and maintenance in any other manner consistent with the rules and practice of the court, and may also grant alimony *pendente lite;* and the court may on application from time to time make such alterations in the allowance of alimony and maintenance as shall appear reasonable and proper."

We do not find in the foregoing statute authority to make the decree a lien upon personal property. It provides where the wife is a complainant, the court may require the defendant to give reasonable security; *second*, to enforce the payment in any other manner consistent with the rulings and practice of the court. No attempt was made in this case to require the defendant to give security as provided by this statute, and we need therefore only consider the second authorization. This gives us no new remedy, but provides simply that the old remedies may be applied.

Decreeing a lien upon personal property is not one of the

methods for collecting alimony provided by this statute, and it is inconsistent with the rules and practice in force in this state. This portion of the divorce act was under consideration by the supreme court of Illinois in the case of *Sapp v. Wightman*, 103 Ill. 150, and it was held that the words, "or in any other manner consistent with the rules and practice of the court," mean "no more than that resort may be had to the known modes, under the rules and practice of the court of chancery, of enforcing obedience to writs, orders and decrees, as sequestration, attachment for contempt, etc., or the statutory method of creating a lien on lands within the court's jurisdiction."

In the case of *Yelton v. Handley*, 28 Ill., Appellate Court Reports, 640, it was held that a court of equity has no power to make a decree for alimony a lien upon personal property. This is the only case that we have been able to find in which the question has been raised in any appellate court. Our statute appears to have been taken from Illinois, and the decisions of that state should be given great weight, although not rendered until after the adoption of the statute in this state. In Illinois, as we have seen, it has been held that the power of the court to make a decree for alimony a lien upon real estate is expressly upheld, and the power to make a lien upon personal property is as expressly denied. *Wightman v. Wightman*, 45 Ill. 167; *Yelton v. Handley, supra; Sapp v. Wightman, supra.*

There seems to be no reason for extending this rule, and in practice we think that liens of this character upon personal property would lead to great inconvenience. Such a decree is unusual, and as the usual remedies for the enforcement of a decree for alimony are complete and adequate, there is no reason for resorting to a doubtful remedy.

In so far as the decree attempts to make the allowance for alimony a lien upon the personal property of the defendant, it is hereby modified, and with this modification the judgment is affirmed. Costs in this court will not be awarded to either party.

*Judgment accordingly.*